**WO**                    NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| D. R. Horton Incorporated, *et al.*, | No. CV-14-02507-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Maryland Casualty Company, *et al.*, | |
| Defendants. | |

Defendants Maryland Casualty Company and Assurance Company of America (hereinafter, collectively "Zürich") have filed a Motion for Judgment on the Pleadings, or in the Alternative, Partial Summary Judgment in this matter (Doc. 96. Mot.). Plaintiffs D. R. Horton, Inc., D. R. Horton, Inc. – Dietz-Crane, and DRH Southwest Construction Incorporated (hereinafter, collectively "Horton") have filed a Response to that Motion (Doc. 100, Resp.) and a Statement of Facts in support of it (Doc. 101, PSOF), to which Zürich has filed a Reply (Doc. 103, Reply). The Court held oral argument on the Motion February 3, 2016. For the reasons set forth below, the Court will deny Defendants' Motion with leave to re-raise after discovery has concluded.

I.      **FACTS, POSTURE AND BACKGROUND**

        A.      **Facts Relevant to Zürich's Motion for Judgment on the Pleadings**

        The Court credits as true the allegations in Horton's Complaint (Doc. 1, Compl.) for purposes of resolving the Rule 12 Motion, as it must. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citing *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996)).

1          Between 2002 and 2010, Horton developed a single-family residential community
2     called the Oasis at Magic Ranch in Florence, Arizona. (Compl. ¶ 10.) Horton acted as the
3     general contractor for the project, and contracted with several specialty subcontractors,
4     including LMC Construction Incorporated ("LMC"), who performed concrete work, and
5     J. L. Baugh Construction Company ("Baugh"), who performed framing work. (Compl.
6     ¶ 11-13.) Horton's subcontractor agreements with LMC and Baugh required the
7     subcontractors to carry commercial general liability insurance ("CGL") which named
8     Horton as an additional insured in each of their policies. (Compl. ¶ 14.)

9          In 2009, homeowners in the Oasis served Horton with notices of claim alleging
10    construction defects in their homes. In all, 150 homeowners made such claims, all of
11    which either proceeded on an arbitration track as required by certain homeowners'
12    purchase contracts, or through an action brought in Arizona state court (collectively, the
13    "Homeowners' Claims"). (Compl. ¶ 16-18.) Horton ultimately settled all of the
14    Homeowners' Claims. (Compl. ¶ 20.)

15         In late Fall, 2009, Horton tendered the defense of the Homeowners' Claims to
16    Zürich. (Compl. ¶ 21-22.) Zürich accepted Horton's tender of defense subject to a
17    reservation of rights. (Compl. ¶ 23.) But Horton alleges that Zürich did not fund Horton's
18    defense of the Homeowners' Claims, and instead delayed payments of Horton's defense
19    costs and fees, which forced Horton to fund the defense itself. (Compl. ¶ 26.)

20         Horton alleges that Zürich ultimately made only partial payments of just less than
21    $400,000 on a total defense obligation of over $1.4 million. (Compl. ¶ 27.) On or about
22    November 13, 2012, Horton sent Zürich a letter requesting that Zürich honor its
23    obligations to pay the outstanding balance of Horton's defense costs and fees related to
24    the Homeowners' Claims. (Compl. ¶ 30.) Horton sent a second letter to Zürich on
25    May 23, 2013, which also demanded payment of costs and fees for defending the
26    Homeowners' Claims. (Compl. ¶ 31.) At a time unspecified in the Complaint, but "in
27    response to" Horton's letters, and therefore presumably after May 23, 2013, Horton
28

1   alleges that Zürich tendered a total of $392,000, which Zürich claimed was its equitable

2   or appropriate share of the defense costs. (Compl. ¶ 33.)

3       **B.     Additional Facts Relevant to Zürich's Alternative Motion for
            Partial Summary Judgment**

4

5       The following additional facts were not pleaded in Horton's Complaint or

6   supporting materials, and therefore the Court may not consider them in resolving the

7   Federal Rule of Civil Procedure 12(c) Motion. *See* Fed. R. Civ. P. 12(d); *Cafasso, U.S. ex*

8   *rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). The facts

9   appear in Horton's Statement of Facts in Opposition to Zürich's Motion in the

10  Alternative for Partial Summary Judgment (PSOF), and so will be considered in

11  evaluating that Motion only.

12      On December 6, 2011, Horton began sending Zürich periodic invoices for its

13  defense costs, through its billing company, claiming an initial balance due of $697,721.

14  (PSOF ¶ 7.) Zürich made its first payment of $60,000 toward those defense costs under

15  the LMC insurance policy on December 22, 2011, and its first payment of $60,000 under

16  the Baugh insurance policy on January 24, 2012. (PSOF ¶ 8.) Horton continued to

17  invoice Zürich for defense costs under these policies through July 15, 2013. (PSOF ¶ 9.)

18  At no time did Zürich respond to any of the invoices that it was unwilling to pay further

19  defense costs. (PSOF ¶ 10.)

20      On January 31, 2013, Zürich agreed to mediate its defense cost obligation under

21  the LMC and Baugh policies with Horton, and offered to pay $428,800 in defense costs.

22  (PSOF ¶ 11.) Horton rejected that offer. (PSOF ¶ 11.)  On February 4, 2013, Zürich

23  offered to pay $274,400, less the $60,000 at previously paid, toward the defense costs

24  under each of the two policies. (PSOF ¶ 12.) On May 23rd, 2015, Horton demanded

25  payment from Zürich for its full defense obligation in the amount of $1,270,751. (PSOF ¶

26  13.) On June 12, 2013, Zürich offered to pay $196,000 less the $60,000 previously paid,

27  under each of the policies, and tendered two checks, each in the amount of $136,000, to

28  Horton. (PSOF ¶ 14.) On June 27, 2013, Horton requested clarification whether it could

1   cash the checks without acceptance and settlement of Zürich's defense obligations.

2   (PSOF ¶ 15.) On July 22, 2013, Zürich advised Horton that it believed its payments of

3   $136,000 under each of the policies satisfied its obligations fully and it would not be

4   paying any further defense costs. (PSOF ¶ 16.)

5   ### C.    Posture of the Litigation

6   On November 13, 2014, Horton filed the Complaint against Zürich in this matter,

7   bringing claims for breach of contract and bad faith, and seeking a declaratory judgment

8   as to the respective rights and obligations of all parties under the policies issued by

9   Zürich to LMC and Baugh naming Horton as an additional insured. (Compl.) Horton

10  seeks both compensatory and punitive damages. (Compl. ¶ 49.)

11  On December 7, 2015, Zürich filed the instant Motion, seeking judgment on the

12  pleadings as to Horton's bad faith claim and any claim for punitive damages. (Mot. at 1.)

13  In the alternative, Zürich moves for partial summary judgment on these same claims.

14  (Mot. at 2.) Zürich asserts that Horton's bad faith claim is time barred, as the operative

15  statute of limitation, Arizona Revised Statute §12–542, requires an action for bad faith to

16  be commenced within two years after the action accrues. (Mot. at 4-5.) Zürich also

17  asserts that Horton's punitive damages claim is deficient because the Complaint does not

18  allege that Zürich acted with an "evil mind" or with spite, actual malice or intent to

19  defraud. (Mot. at 1, 5.)

20  ## II.    LEGAL STANDARDS

21  ### A.    Judgment on the Pleadings

22  Under Rule 12(c), "a party may move for judgment on the pleadings" after the

23  pleadings are closed "but early enough not to delay trial." A motion for judgment on the

24  pleadings pursuant to Rule 12(c) challenges the legal sufficiency of the opposing party's

25  pleadings. *Westlands Water Dist. v. Bureau of Reclamation*, 805 F.Supp. 1503, 1506

26  (E.D. Cal. 1992).

27  A motion for judgment on the pleadings should only be granted if "the moving

28  party clearly establishes on the face of the pleadings that no material issue of fact remains

1     to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios,*

2     *Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Judgment on the

3     pleadings is also proper when there is either a "lack of cognizable legal theory" or the

4     "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*

5     *Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). In reviewing a Rule 12(c)

6     motion, "all factual allegations in the complaint [must be accepted] as true and

7     construe[d] . . . in the light most favorable to the non-moving party." *Fleming v. Pickard*,

8     581 F.3d 922, 925 (9th Cir. 2009). Judgment on the pleadings under Rule 12(c) is

9     warranted "only if it is clear that no relief could be granted under any set of facts that

10    could be proved consistent with the allegations." *Deveraturda v. Globe Aviation Sec.*

11    *Servs.*, 454 F.3d 1043, 1046 (9th Cir. 2006) (internal citations omitted).

12            **B.      Partial Summary Judgment**

13            Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

14    appropriate when: (1) the movant shows that there is no genuine dispute as to any

15    material fact; and (2) after viewing the evidence most favorably to the non-moving party,

16    the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v.*

17    *Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285,

18    1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect

19    the outcome of the suit under governing [substantive] law will properly preclude the

20    entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

21    A "genuine issue" of material fact arises only "if the evidence is such that a reasonable

22    jury could return a verdict for the non-moving party." *Id.*

23            In considering a motion for summary judgment, the court must regard as true the

24    non-moving party's evidence if it is supported by affidavits or other evidentiary material.

25    *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not

26    merely rest on its pleadings; it must produce some significant probative evidence tending

27    to contradict the moving party's allegations, thereby creating a material question of fact.

28    *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative

1    evidence in order to defeat a properly supported motion for summary judgment); *First*

2    *Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

3    "A summary judgment motion cannot be defeated by relying solely on conclusory

4    allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

5    1989). "Summary judgment must be entered 'against a party who fails to make a showing

6    sufficient to establish the existence of an element essential to that party's case, and on

7    which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d

8    1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

9    **III.    ANALYSIS**

10           **A.    Judgment on the Pleadings**

11           Arizona Revised Statute § 12-542 provides in relevant part that causes of action

12   for personal injury claims "shall be commenced and prosecuted within two years after the

13   cause of action accrues, and not afterward." State law provides, and the parties do not

14   contest, that an insurance bad faith claim is a cause of action governed by § 12-542 and

15   thus subject to the two-year limitation period.

16           Horton filed this cause of action against Zürich on November 13, 2014. In order to

17   avoid the time bar of § 12-542, then, Horton's bad faith claim must have accrued on or

18   after November 13, 2012.

19           An insurer commits bad faith when it intentionally fails to pay a claim without a

20   reasonable basis. *Brown v. Superior Court*, 670 P.2d 725, 734 (Ariz. 1983). Horton's bad

21   faith claim is that Zürich failed to meet its obligation to defend the Homeowners' Claims.

22   Such a claim would accrue at the point that Zürich failed to pay the defense costs and

23   fees associated with the Homeowners' Claims and Horton knew or reasonably should

24   have known of that failure.

25           Zürich asserts that Horton's bad faith claim accrued at the point Horton resolved

26   the Homeowners' Claims, either by settlement or entry of judgment, all of which

27   occurred in 2010. In support of its argument, Zürich cites *Manterola v. Farmers' Ins.*

28   *Exchange*, 30 P.3d 639 (Ariz. App. 2001), for the proposition that Horton's bad faith

1    claim "accrues at the time the underlying action becomes final by way of settlement or

2    judgment." (Mot. at 4.) But in so arguing, Zürich ignores the fact that *Manterola* was a

3    bad faith failure-to-settle case, and expressly directed its holding to failure-to-settle

4    claims: "In *Taylor* [*v. State Farm Mutual Automobile Ins. Co.*, 913 P.2d 1092 (1996)],

5    our Supreme Court held that a third-party bad faith failure-to-settle claim accrues at the

6    time the underlying action becomes final and non-appealable." 30 P.3d at 643 (internal

7    citations and quotations omitted). The holding in *Manterola*, and in *Taylor* before it, was

8    an application of a more general test to determine when a bad faith cause of action

9    accrues to the specific circumstance of a failure-to-settle case. That more general

10   statement of the law, which applies to all bad faith causes of action—not just failure-to-

11   settle claims—can also be found in *Manterola*:

12

13        [T]he limitations period does not commence until [an] actionable [wrong]
          exists, that is, [a tort] that results in appreciable, non-speculative harm to

14        the [plaintiff] . . . .[U]nder the common law "discovery rule," a cause of
          action does not accrue until the plaintiff knows or with reasonable diligence

15        should know the facts underlying the cause.

16

17   *Id.* (internal citations and quotations omitted).

18          Applying this general test, it was clear from the facts in *Manterola* that the bad

19   faith claim there had accrued at the time the state court entered the stipulated judgment in

20   the underlying personal injury action. At that point, the insurer already had refused to

21   settle, and thus the insureds knew the facts underlying the cause of action and the extent

22   to which they were harmed. But where the alleged bad faith arises out of a failure to pay

23   the defense costs of the underlying claims against an insured, the insured may not know

24   the facts underlying the bad faith cause of action—in other words, it may not be clear to a

25   reasonable insured that it will not receive all of the defense costs to which it believes it is

26   entitled—until much later. When those facts can be known in a given matter is a fact-

27   bound issue itself.

28

1    Certainly there are circumstances where an insured can know all the facts

2  underlying the bad faith cause of action for failure to pay the defense costs at the time of

3  settlement or judgment. For example, an insurer might advise its insured prior to

4  settlement of the underlying claims that it unequivocally refuses to pay any defense costs,

5  or any amount above a certain point. Or the terms of an insurance policy might

6  unequivocally require payment of all defense costs by the date of settlement or some

7  other date certain, such that an insurer's failure to meet that date would provide an

8  insured clear knowledge of a breach. But that is not what Horton pled in its Complaint

9  here; nor is any other information to that effect properly before this Court in the context

10  of a Rule 12 Motion.[1]

11    Based on the Complaint in this matter, a factfinder could reasonably conclude that

12  Horton did not discover or know the facts underlying its bad faith claim until much later

13  than the settlement and judgment resolving the Homeowners' Claims, and after

14  November 13, 2012. Horton alleged that Zürich continued to pay after it accepted

15  Horton's tender of defense subject to a reservation of rights and after the settlement and

16  judgment resolving the Homeowners' Claims became final, and continued to discuss

17  possible further payment well into 2013. The Court reads the Complaint to allege that

18  sometime after May 23, 2013, in response to a demand from Horton for payment of

19  additional defense costs, Zürich first unequivocally stated it would pay no more than a

20  total of $392,000, which was about one million less than Horton believed Zürich owed.

21  While a factfinder could conclude that Horton knew or should have known that any bad

22  faith claim it might have had accrued prior to November 13, 2012, it also could conclude

23  from the sequence of events pleaded that Horton did not know until as late as after

---

26    [1] At oral argument on this Motion, counsel argued alternatively that Horton had all
27  the information it needed, and thus its bad faith cause of action had accrued, when Zürich
   issued its reservation of rights letter. Absent something more, this cannot be so. It is
28  settled law in Arizona that the mere reservation of rights in accepting an insured's
   tendered defense does not constitute a breach of the obligations an insurer owes to an
   insured. *See Parking Concepts, Inc. v. Tenney*, 83 P.3d 19, 22 (Ariz. 2004).

1    May 23, 2013, that Zürich would not pay the full amount requested for defense of the

2    Homeowners' Claims.

3           Under the Federal Rules' simplified standard for pleading, a court may dismiss a

4    complaint only if it is clear that no relief could be granted under any set of facts that

5    could be proved and could be consistent with the allegations. *Swierkiewicz v. Sorema N.*

6    *A.*, 534 U.S. 506, 514 (2002). Though Plaintiff's allegations are not extensively detailed,

7    the Court is not convinced that no set of facts could be proved consistent with the

8    allegations under which no relief could be granted. *See id.* It therefore will deny Zürich's

9    Motion for Judgment on the Pleadings as to the bad faith cause of action.

10          **B.      Partial Summary Judgment in the Alternative**

11          Under the same reasoning as set forth above, the Court will deny Zürich's Motion

12   in the Alternative for Partial Summary Judgment as to the bad faith claim. While the

13   parties' statements of fact in support of their respective Motion and Response provide

14   additional facts regarding the interaction of Horton and Zürich over defense costs that the

15   Court could not consider for purposes of resolving the Rule 12(c) motion, these

16   additional facts still do not tip the balance otherwise. The periodic billing statements sent

17   to Zürich without response, the post-November 13, 2012 correspondence between the

18   parties, the proof of payments made by Zürich in 2011 and 2012, and its offers in 2013 to

19   pay still more, all constitute evidence with which skilled counsel might persuade a

20   factfinder that Horton either did or did not know that its claim had accrued as of

21   November 13, 2012. Under that circumstance, the standard is clear that the non-movant

22   must prevail. Put into the more formal framework for evaluating motions for partial

23   summary judgment, Horton has produced "some significant probative evidence tending

24   to contradict the moving party's allegations, thereby creating a material question of fact"

25   as to when Horton's bad faith claim accrued. *See Anderson*, 477 U.S. at 256-57. Thus,

26   viewing the evidence in the light most favorable to Horton, Zürich is not entitled to

27   prevail as a matter of law.

28

1     Zürich may be able to demonstrate that Horton knew earlier than November 13,

2   2012, that Zürich would not pay what Horton believed it was owed, either through terms

3   of the insurance contracts, through other communications between Horton and Zürich, or

4   even through evidence of course of dealing in the CGL insurance industry. But none of

5   that evidence is before the Court on the Motion for Judgment on the Pleadings, and

6   neither was it provided by any party in support of or opposition to the Motion in the

7   Alternative for Partial Summary Judgment. The parties are free to re-urge this issue in

8   their dispositive motions after discovery, should such evidence exist.

9       **C.    Horton's Claim for Punitive Damages**

10     In its Complaint, Horton alleges that Zürich, "knowingly, intentionally and

11  repeatedly failed to pay [Horton]'s defense costs and fees in the Underlying Suit despite

12  their knowledge that [Horton] would incur unjustified and significant harm as a result of

13  [Zürich]'s conduct." (Compl. ¶ 48.) Horton also expressly prayed for damages to include

14  punitive damages. (Compl. ¶ 49.)

15     Zürich urges in its Motion for Judgment on the Pleadings that the above is

16  insufficient to plead punitive damages as Horton does not allege that Zürich acted with an

17  "evil mind" or that Zürich's "conduct was motivated by spite, actual malice or intent to

18  defraud." (Mot. at 5.) But there is no magic language that a party must use to adequately

19  plead a claim for punitive damages. A plaintiff must merely plead sufficient facts to

20  convey that a defendant "consciously pursued a course of conduct knowing that it created

21  a substantial risk of significant harm to others." *Rawlings v. Apodaca*, 726 P.2d 565, 578-

22  79 (Ariz. 1986); *see also Gurule v. Illinois Mut. Life and Cas. Co*., 734 P.2d 85, 87 (Ariz.

23  1987). This Horton has done. Horton alleged that Zürich repeatedly failed to pay

24  Horton's defense costs, intentionally, and knowing that in doing so it would cause Horton

25  significant harm. These factual allegations go to the heart of the requirement for a

26  punitive damages claim. Additionally, Zürich clearly was on notice that Horton sought

27  punitive damages as that claim is expressly made in paragraph 49 of the Complaint.

28

1    Horton has satisfied the pleading requirement for a punitive damages claim

2    sufficient to survive a motion to dismiss or a motion for judgment on the pleadings.

3    Again, after discovery, Zürich will be free to challenge the sufficiency of evidence

4    Horton has put forward in support of that claim.

5        **IT IS THEREFORE ORDERED** denying Zürich's Motion for Judgment on the

6    Pleadings or, in the Alternative, Partial Summary Judgment (Doc. 96).

7        **IT IS FURTHER ORDERED** denying Horton's Federal Rule of Civil Procedure

8    56(d) Motion for Additional Time as moot (Doc. 100).

9        Dated this 25th day of April, 2016.

10

11   _____
     Honorable John J. Tuchi

12   United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28